1  M. ANDERSON BERRY (262879)
   GREGORY HAROUTUNIAN (SBN 330263)
2  **CLAYEO C. ARNOLD,**
   **A PROFESSIONAL LAW CORP.**
3  865 Howe Avenue
   Sacramento, CA 95825
4  Telephone: (916) 777-7777
   Facsimile: (916) 924-1829
5  aberry@justice4you.com
6  gharoutunian@justice4you.com
7  *Attorneys for Plaintiff and the Proposed Class*

8                  **THE UNITED STATES DISTRICT COURT**
                **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
9

10  ANITA CASTRO, an individual on behalf of        Case No. 3:21-cv-07887
    herself and all others similarly situated,
11

12                        Plaintiff,              **CLASS ACTION COMPLAINT**

13      v.

14                                               **DEMAND FOR JURY TRIAL**

15  SYUFY ENTERPRISES, LP, and
    VILLASPORT, LLC,
16

17                        Defendants.

18

19       Plaintiff Anita Castro ("Plaintiff"), on behalf of herself and all other persons similarly

20  situated, brings this Class Action Complaint against Syufy Enterprises, LP ("Syufy") and

21  VillaSport, LLC ("VillaSport" collectively "Defendants") and alleges, upon personal knowledge

22  as to her own actions and her counsel's investigation, and upon information and belief as to all

23  other matters, as follows:

24

25                        **I.  NATURE OF THE ACTION**

26       1.      Syufy is a holding company that owns several business ventures, including

27  VillaSport, an athletic club and spa.

28       2.      VillaSport is a membership based athletic club that offers guests access to gyms,

                                      1
CLASS ACTION COMPLAINT

pools, spas, and family activities.

3.     Syufy experienced a data breach that began on September 7, 2020 and continued until around September 15, 2020 (the "Data Breach"). Hackers gained access to Syufy's network where it stored information about clients of VillaSport and took customers' unencrypted personally identifiable information ("PII"), including names and payment account numbers.

4.     About one year later, on or about August 24, 2021, Syufy decided it was finally time to notify customers and state Attorneys General that they did not encrypt this PII and as a result hackers were able to access the unencrypted files; this meant the PII was no longer in Syufy's control. As such, Defendants failed to report the breach in a timely manner and handled the PII in a negligent and/or careless manner.

5.     Plaintiff brings this action on behalf of all persons whose PII was compromised as a result of Defendants' failure to: (i) adequately protect consumers' PII, (ii) warn its customers, potential customers, and other consumers of their inadequate information security practices, and (iii) effectively monitor their websites and platforms for security vulnerabilities and incidents. Defendants' conduct amounts to negligence and violates federal and state statutes.

6.     Plaintiff and similarly situated individuals have suffered injury as a result of Defendants' conduct.  These injuries include: (i) lost or diminished inherent value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (iv) the continued and certainly present and continuing risk to their PII, which: (a) remains available on the dark web for individuals to access and abuse; and (b) remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII; and (v) deprivation of rights they possess under state consumer protection statutes.

## II.  PARTIES

7.     Plaintiff Anita Castro is a citizen of California, residing in the County of Santa Clara, California. Ms. Castro received a Notice of Data Breach from Defendants dated August

CLASS ACTION COMPLAINT

24, 2021, on or about August 28, 2021. The Notice advised that the Data Breach had occurred following an event where an "unauthorized actor viewed or took . . . files . . . that contained [Plaintiff's] name, [and] financial account number."

8.    Defendant Syufy Enterprises, LP ("Syufy") is a California limited partnership with its principal place of business at 150 Pelican Way, San Rafael California. Syufy is a holding company that specializes in entertainment and leisure companies, including high-end athletic clubs and spas, restaurants, golf venues, shopping centers, public markets, and drive-in theaters.

9.    Defendant VillaSport, LLC ("VillaSport") is a California limited liability company with its principal place of business at 150 Pelican Way, San Rafael CA 94901. VillaSport is a real estate company that focuses on athletic clubs that offers a spa, pools, gym, kids club, and other health and wellbeing services for families. VillaSport has seven locations across California, Colorado, Oregon, and Texas.

### III.  JURISDICTION & VENUE

10.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action wherein the amount of controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendants.[1]

11.    This Court has personal jurisdiction over Defendants because Defendants have their principal place of business within this District.

12.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred in, were directed to, and/or

---

[1] Defendants notified the states of Indiana, Maine, Massachusetts, and New Hampshire – just to name a few – that residents of those states were impacted by the Data Breach. *See* https://www.in.gov/attorneygeneral/consumer-protection-division/id-theft-prevention/files/Data-Breach-Year-to-Date-Report.pdf    (last    visited    Oct.    4,    2021); https://apps.web.maine.gov/online/aeviewer/ME/40/15dd9ade-1a9f-4f63-bf27-1308cd9f5ecd.shtml (last visited Oct. 4, 2021); https://www.mass.gov/doc/data-breach-report-2021/download    (last    visited    Oct.    4,    2021);    https://www.doj.nh.gov/consumer/security-breaches/documents/syufy-enterprises-20210830.pdf (last visited Oct. 4, 2021).

CLASS ACTION COMPLAINT

emanated from this District. Defendants reside within this judicial district and a substantial part of the events giving rise to the claims alleged herein occurred within this judicial district.

## IV. SUBSTANTIVE ALLEGATIONS

**Background**

13.     Syufy is a growing entertainment and leisure business that has recently opened several athletic clubs in California, Colorado, Oregon and Texas. Syufy operates these athletic clubs under the name VillaSport. Syufy handles customer information gathered by VillaSport.

14.     In the ordinary course of doing business with Defendants, customers are required to provide Defendants with PII, such as, but not limited to: name, email address, postal address, phone number, date of birth, gender, and payment information.[2] Defendants collect this payment information for club membership purposes, such as for automatic billing for club membership.[3] The payment information likely includes financial account numbers, expiration dates, and CVC security codes to process payment cards.

15.     Syufy assures its customers that it is concerned about PII security and claims: "[We] are committed to protecting the privacy and security of the information entrusted to us."[4] Further, VillaSport states on their Privacy Policy that they "encrypt sensitive personal information, such as [customer] financial account information, using secure socket layer technology (SSL) for data transmissions and industry standard encryption methods for data at rest."[5]

16.     However, Syufy does not claim that it abides by the Payment Card Industry Data Security Standard ("PCI DSS") compliance, which is a requirement for businesses that store, process, or transmit payment card data.

---

[2] https://www.villasport.com/Beaverton/Privacy-Policy (last visited Oct. 1, 2021).

[3] *Id.*

[4] https://oag.ca.gov/system/files/Syufy%20Enterprises%2C%20LP%20-%20Sample%20Notice.pdf (last visited Oct. 1, 2021).

[5] https://www.villasport.com/San-Jose/Privacy-Policy (last visited Oct. 1, 2021).

CLASS ACTION COMPLAINT

17.    The PCI DSS defines measures for ensuring data protection and consistent security processes and procedures around online financial transactions. Businesses that fail to maintain PCI DSS compliance are subject to steep fines and penalties.

18.    As formulated by the PCI Security Standards Council, the mandates of PCI DSS compliance include, in part: Developing and maintaining a security policy that covers all aspects of the business, installing firewalls to protect data, and ***encrypting*** payment data that is transmitted over public networks using anti-virus software and updating it regularly.

**The Data Breach**

19.    Starting on or about August 24, 2021, Syufy notified customers about the Data Breach through a letter entitled Notice of Data Breach.  Syufy's Executive Vice President of Business Affairs, Andrew C. McCullough, informed Syufy's affected customers that:

> On September 16, 2020, we detected suspicious activity on certain systems on the Syufy network. We immediately launched an investigation to determine the nature and scope of the incident. Through the investigation, we identified certain files and folders on the network that may have been viewed or taken by an unauthorized actor between September 7, 2020 and September 15, 2020. Although the investigation could not definitively confirm whether an unauthorized actor viewed or took such files, in an abundance of caution, we conducted a thorough review of the potentially impacted files to determine whether they contained any sensitive information. This review was completed on or about March 1, 2021. We thereafter worked to identify address information in order to notify potentially impacted individuals, which we have now completed.

20.    Defendants' notice to the state Attorneys General also provided this same information.[6]

21.    Syufy failed to use encryption to protect PII, and unauthorized individuals accessed a file with Defendants' customers' unencrypted, unredacted information, including name and payment card information, which includes payment card number, CVVC code, expiration date, and possibly more. Further, Syufy failed to take the reasonable, and inexpensive, security step of deleting information that it no longer needed. Plaintiff Castro stopped using Syufy's services in 2019 – before this data breach occurred.

---

[6]*See,    e.g.,*    https://www.doj.nh.gov/consumer/security-breaches/documents/syufy-enterprises-20210830.pdf (last visited Oct. 4, 2021).

5

CLASS ACTION COMPLAINT

22.    Syufy waited almost an entire year before it decided to notify Plaintiff and Class Members that their PII was compromised. This is time that Plaintiff and Class Members could have used to check their credit reports or identity for theft and abuses. Without being alerted of the data breach in a timely manner, Plaintiff and Class Members were not on the defense to protect their PII.

23.    As of October 1, 2021, Defendants reported to the Maine Attorney General that they have identified 13,673 customers whose PII may have been improperly accessed in the data breach.[7] This included Maine residents. Syufy also notified the appropriate Attorneys General that residents of Massachusetts, New Hampshire and Indiana – just to name a few – were also impacted by the Data Breach.[8]

**Value of Personally Identifiable Information**

24.    The PII of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. According to the Dark Web Price Index for 2021, stolen PII with financial account information can range from $40 to $150 depending on the account balance. For example, information about an account with an average balance of $100 can go for $40, for an account with an average of $1,000 hackers will pay $150.[9]

25.    At all relevant times, Defendants knew, or reasonably should have known, of the importance of safeguarding PII and of the foreseeable consequences that would occur if its data security system was breached, including, specifically, the significant costs that would be imposed on its customers as a result of a breach. Defendants were, or should have been, fully aware of the significant volume of transactions they handled amounting to potentially thousands of payment card transactions, and thus, the significant number of individuals who would be harmed

---

[7] https://apps.web.maine.gov/online/aeviewer/ME/40/15dd9ade-1a9f-4f63-bf27-1308cd9f5ecd.shtml (last visited Oct. 1, 2021)

[8] *See, supra*, fn. 1.

[9] *Dark Web Price Index 2021*, https://www.privacyaffairs.com/dark-web-price-index-2021/ (last visited Oct. 1, 2021)

6

CLASS ACTION COMPLAINT

by a breach of Defendants' systems.

**Defendants Were Aware of the Risks of a Data Breach**

26.    Defendants had obligations created by contract, industry standards, common law, and representations made to Plaintiff and Class Members and the general public to keep their PII confidential and to protect it from unauthorized access and disclosure.

27.    Plaintiff and Class Members provided their PII to Defendants with the reasonable expectation and mutual understanding that Defendants would comply with their obligations to keep such information confidential and secure from unauthorized access.

28.    Defendants' data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches preceding the date of the breach.

29.    Indeed, data breaches, such as the one experienced by Defendants, have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, a potential attack.  Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known and completely foreseeable to the public, including Defendants.

30.    According to the Federal Trade Commission ("FTC"), identity theft wreaks havoc on consumers' finances, credit history, and reputation and can take time, money, and patience to resolve.[10]  Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank and finance fraud.[11]

31.    The PII of Plaintiff and Class Members was taken by hackers to engage in identity

---

[10]    *See Taking Charge, What to Do If Your Identity is Stolen*, FTC, 3 (Apr. 2013), https://dss.mo.gov/cd/older-youth-program/files/taking-charge-what-to-do-if-identity-is-stolen.pdf (last visited Oct. 1, 2021).

[11]    *Id*.  The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 CFR § 603.2. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." *Id*.

7

CLASS ACTION COMPLAINT

theft and/or to sell it to other criminals who will purchase the PII for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

32.     Defendants knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiff and Class Members and of the foreseeable consequences that would occur if Defendants' data security systems were breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

33.     Plaintiff and Class Members now currently face years of constant surveillance and monitoring of their financial and personal records and loss of rights. Plaintiff and Class Members are incurring, and will continue to incur, such damages in addition to any fraudulent use of their PII.

34.     The injuries to Plaintiff and Class Members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures for the PII of Plaintiff and members of the Class, such as encrypting the data so unauthorized third parties could not see the PII.

**Defendants Failed to Comply with FTC Guidelines**

35.     The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

36.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

8

CLASS ACTION COMPLAINT

37.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

38.     The FTC has brought enforcement actions against businesses for failing to protect consumer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45.  Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

39.     Defendants failed to properly implement basic data security practices, such as encrypting PII or deleting it when it is no longer needed, and their failure to employ reasonable and appropriate measures to protect against unauthorized access to consumer PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

40.     Defendants were at all times fully aware of their obligation to protect the PII of the consumers they interact with.  Defendants were also aware of the significant repercussions that would result from their failure to do so.

**Defendants Failed to Comply with Industry Standards**

41.     A number of industry and national best practices have been published and should have been used as a go-to resource and authoritative guide when developing Defendants' cybersecurity practices.

42.     Best cybersecurity practices that are standard include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

CLASS ACTION COMPLAINT

43.    Upon information and belief, Defendants failed to meet the minimum standards of the following cybersecurity frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established standards in reasonable cybersecurity readiness.

44.    These foregoing frameworks are existing and applicable industry standards in Defendants' industry, and Defendants failed to comply with these accepted standards, thereby opening the door to the Cyber-Attack and causing the Data Breach.

**Plaintiff's and Class Members' Damages**

45.    To date, Defendants have done absolutely nothing to provide Plaintiff and Class Members with relief for the damages they have suffered as a result of the Data Breach, including, but not limited to, the costs and loss of time they incurred because of the Data Breach. Defendants have not offered any identity protection or credit monitoring services. This is wholly inadequate as it fails to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face the risk of identity theft and credit fraud.

46.    Defendants entirely fail to provide any compensation for the unauthorized release and disclosure of Plaintiff's and Class Members' PII.

47.    Plaintiff and Class Members have been damaged by the compromise of their PII in the Data Breach.

48.    Plaintiff and Class Members face substantial present and continuing risk of out-of-pocket fraud losses such as loans opened in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

49.    Plaintiff and Class Members have been, and face substantial present and continuing risks of harm, subjected to phishing, data intrusion, and other illegal activities based on their PII as potential fraudsters use that information to target such schemes more effectively to Plaintiff and Class Members.

CLASS ACTION COMPLAINT

50.     Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly related to the Data Breach.

51.     Plaintiff and Class Members also suffered a loss of value of their PII when it was acquired by cyber thieves in the Data Breach.  Numerous courts have recognized the propriety of loss of value damages in data breach cases.

52.     Plaintiff and Class Members have spent and will continue to spend significant amounts of time to monitor their financial accounts and records for misuse.

53.     Plaintiff and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach.  Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach

54.     Moreover, Plaintiff and Class Members have an interest in ensuring that their PII, which is believed to remain in the possession of Defendants, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing personal and financial information is not accessible online and that access to such data is password protected.

55.     Further, as a result of Defendants' conduct, Plaintiff and Class Members are forced to live with the anxiety that their PII —which contains the most intimate details about a person's life—may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

56.     As a direct and proximate result of Defendants' actions and inactions, Plaintiff and Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at a present and continuing risk of harm.

**Plaintiff Castro's Experience**

57.     Plaintiff Anita Castro received the Notice of Data Breach from Defendant Syufy, dated August 28, 2021, on or about that date.  The Notice stated that the exposed PII "subject to

CLASS ACTION COMPLAINT

unauthorized access includes name, address, and financial account number." Ms. Castro joined VillaSport Athletic Club and Spa on or about March 5, 2018, and cancelled her membership in or about 2019.

58.     As a result of receiving the Data Breach notice, Ms. Castro has spent time dealing with the consequences of the Data Breach, including confirming the legitimacy of the Data Breach, reviewing the information compromised by the Data Breach, self-monitoring her accounts, contacting Defendants to understand the scope of the Data Breach, and communicating with her bank regarding a fraudulent charge on her payment card.

59.     Following this Data Breach, in or about March 2021, an unknown, unauthorized third party used Ms. Castro's payment card to fraudulently purchase goods online for $9.95.

60.     Ms. Castro is not aware of any other data breaches that could have resulted in the theft of her payment card information or other PII. She is very careful about sharing her PII, and has never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

61.     Ms. Castro stores any and all documents containing her PII in a safe and secure digital location and destroys any documents she receives in the mail that contain any of her PII or that may contain any information that could otherwise be used to compromise her identity. Moreover, she uses complex passwords for her online accounts for added security, and multi-factor authentication for particularly sensitive accounts.

62.     Ms. Castro suffered actual injury in the form of damages to and diminution in the value of her PII—a form of intangible property that Defendants did not adequately safeguard and was compromised in and as a result of the Data Breach.

63.     Ms. Castro also suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has serious concerns for the loss of her privacy.

64.     Ms. Castro has suffered imminent and impending injury arising from the present and continuing risk of fraud, identity theft, and misuse resulting from her PII being placed in the hands of criminals.

65.     Ms. Castro has become worried about this theft of her PII and has a continuing

CLASS ACTION COMPLAINT

interest in ensuring that Defendants protect and safeguard her PII, which remains in Defendants' possession, from ongoing and future breaches.

## V.  CLASS ACTION ALLEGATIONS

66.     Plaintiff brings this nationwide class action pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and on behalf of all members of the following class:

> **All individuals residing in the United States whose PII was compromised in the Data Breach announced by Syufy on or about August 24, 2021 (the "Nationwide Class").**

67.     The California Subclass is defined as follows:

> **All individuals residing in California whose PII was compromised in the Data Breach announced by Syufy on or about August 24, 2021 (the "California Class").**

The Nationwide Class and California Class together are referred to herein as the "Classes."

68.     Excluded from the Classes are the following individuals and/or entities: Defendants and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

69.     Plaintiff reserves the right to modify or amend the definitions of the proposed Classes before the Court determines whether certification is appropriate.

70.     **Numerosity**: The Classes are so numerous that joinder of all members is impracticable. Defendants have identified 13,673 customers whose PII may have been improperly accessed in the data breach, and the Classes are apparently identifiable within Defendants' records.

71.     **Commonality**: Questions of law and fact common to the Classes exist and

13

CLASS ACTION COMPLAINT

predominate over any questions affecting only individual Class Members. These include:

    a.  When Defendants actually learned of the data breach and whether its response was adequate;

    b.  Whether Defendants owed a duty to the Class to exercise due care in collecting, storing, safeguarding and/or obtaining their PII;

    c.  Whether Defendants breached that duty;

    d.  Whether Defendants implemented and maintained reasonable security procedures and practices appropriate to the nature of storing Plaintiff's and Class Members' PII;

    e.  Whether Defendants acted negligently in connection with the monitoring and/or protection of Plaintiff's and Class Members' PII;

    f.  Whether Defendants knew or should have known that it did not employ reasonable measures to keep Plaintiff's and Class Members' PII secure and prevent loss or misuse of that PII;

    g.  Whether Defendants adequately addressed and fixed the vulnerabilities which permitted the data breach to occur;

    h.  Whether Defendants caused Plaintiff and Class Members damages;

    i.  Whether Defendants violated the law by failing to promptly notify Class Members that their PII had been compromised;

    j.  Whether Plaintiff and the other Class Members are entitled to credit monitoring and other monetary relief;

72.   **Typicality**: Plaintiff's claims are typical of those of other Class Members because all had their PII compromised as a result of the Data Breach, due to Defendants' misfeasance.

73.   **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Class Members. Plaintiff's Counsel are competent and experienced in litigating privacy-related class actions.

74.   **Superiority and Manageability**: Under Rule 23(b)(3), a class action is superior

CLASS ACTION COMPLAINT

to other available methods for the fair and efficient adjudication of this controversy since joinder of all the Class Members is impracticable.  Individual damages for any individual Class Member are likely to be insufficient to justify the cost of individual litigation, so that in the absence of class treatment, Defendants' misconduct would go unpunished.  Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims.  There will be no difficulty in the management of this action as a class action.

75.    Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

76.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.  Such particular issues include, but are not limited to:

      a.    Whether Defendants owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

      b.    Whether Defendants breached a legal duty to Plaintiff and the Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

      c.    Whether Defendants failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

      d.    Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the data breach; and

      e.    Whether Class Members are entitled to actual damages, credit monitoring or other injunctive relief, and/or punitive damages as a result of Defendants' wrongful

CLASS ACTION COMPLAINT

conduct.

## COUNT I
### Negligence
### (On Behalf of Plaintiff and the Classes)

77. Plaintiff and Class Members re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 76.

78. Defendants owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, using, and protecting their PII from unauthorized third parties.

79. The legal duties owed by Defendants to Plaintiff and Class Members include, but are not limited to the following:

    a. To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII of Plaintiff and Class Members in its possession;

    b. To protect PII of Plaintiff and Class Members in its possession using reasonable and adequate security procedures that are compliant with industry-standard practices; and

    c. To implement processes to quickly detect a data breach and to timely act on warnings about data breaches, including promptly notifying Plaintiff and Class Members of the Data Breach.

80. Defendants' duty to use reasonable data security measures also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce," including, as interested and enforced by the FTC, the unfair practices of failing to use reasonable measures to protect PII by companies such as Defendants.

81. Various FTC publications and data security breach orders further form the basis of Defendants' duty. Plaintiff and Class Members are consumers under the FTC Act. Defendants violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with industry standards. These failures include, but are not limited to not encrypting

16

CLASS ACTION COMPLAINT

PII and by failing to delete PII when no longer needed.

82.    Defendants breached their duties to Plaintiff and Class Members.  Defendants knew or should have known the risks of collecting and storing PII and the importance of maintaining secure systems.

83.    Defendants knew or should have known that their security practices did not adequately safeguard Plaintiff's and Class Members' PII, including, but not limited to, the failure to detect security breaches in a timely fashion.

84.    Through Defendants' acts and omissions described in this Complaint, including Defendants' failure to provide adequate security and its failure to protect the PII of Plaintiff and Class Members from being foreseeably captured, accessed, exfiltrated, stolen, disclosed, accessed, and misused, Defendants unlawfully breached its duty to use reasonable care to adequately protect and secure Plaintiff's and Class Members' PII during the period it was within Defendants' possession and control.

85.    Defendants breached the duties it owed to Plaintiff and Class Members in several ways, including:

 a.  Failing to implement adequate security systems, protocols, and practices sufficient to protect customers' PII and thereby creating a foreseeable present and continuing risk of harm;

 b.  Failing to comply with the minimum industry data security standards during the period of the data breach (e.g., There is no indication that Defendants' commerce platform is PCI DSS compliant and encrypts customers' order information, such as name, address, and credit card number, during data transmission, which did not occur here);

 c.  Failing to act despite knowing or having reason to know that Defendants' systems were vulnerable to a data breach; and

 d.  Failing to timely and accurately disclose to customers that their PII had been improperly acquired or accessed and was potentially available for sale to criminals

CLASS ACTION COMPLAINT

on the dark web.

86.    Due to Defendants' conduct, Plaintiff and Class Members are entitled to credit monitoring. Ongoing credit monitoring is reasonable here. The PII taken can be used towards identity theft and other types of financial fraud against the Class members. Hackers got the *fullz* – everything they need to illegally use Syufy customers' credit cards or bank accounts to make illegal purchases. There is no question that this PII was taken by sophisticated cybercriminals, increasing the risks to the Class Members. The consequences of identity theft are serious and long-lasting. There is a benefit to early detection and monitoring.

87.    Some experts recommend that data breach victims obtain credit monitoring services for at least ten years following a data breach. Annual subscriptions for credit monitoring plans range from approximately $219 to $358 per year.

88.    As a result of Defendants' negligence, Plaintiff and Class Members suffered injuries that may include: (i) the lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the data breach, including but not limited to time spent deleting phishing email messages and cancelling credit cards believed to be associated with the compromised account; (iv) the continued risk to their PII, which may remain for sale on the dark web and is in Defendants' possession, subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII of customers and former customers in their continued possession; and (v) costs in terms of time, effort, and money that will be expended to prevent, monitor, detect, contest, and repair the impact of the PII compromised as a result of the data breach for the remainder of the lives of Plaintiff and Class Members, including ongoing credit monitoring.

89.    These injuries were reasonably foreseeable given the history of security breaches of this nature since 2016. The injury and harm that Plaintiff and the other Class Members

CLASS ACTION COMPLAINT

suffered was the direct and proximate result of Defendants' negligent conduct.

## COUNT II
### Negligence *Per Se*
### (On Behalf of Plaintiff and the Classes)

90.    Plaintiff and Class Members re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 76.

91.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendants' duty in this regard.

92.    Defendants violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards. Defendants' conduct was particularly unreasonable given the nature and amount of PII it obtained and stored, and the foreseeable consequences of the Data Breach for companies of Defendants' magnitude, including, specifically, the immense damages that would result to Plaintiff and Class Members due to the valuable nature of the PII at issue in this case.

93.    Defendants' violations of Section 5 of the FTC Act constitute negligence *per se*.

94.    Plaintiff and Class Members are within the class of persons that the FTC Act was intended to protect.

95.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of its failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and Class Members.

96.    As a direct and proximate result of Defendants' negligence per se, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v)

19

CLASS ACTION COMPLAINT

lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII of consumers in their continued possession; and (viii) costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

97.    Additionally, as a direct and proximate result of Defendants' negligence *per se*, Plaintiff and Class Members have suffered and will suffer the continued risks of exposure of their PII, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fails to undertake appropriate and adequate measures to protect the PII in their continued possession.

**COUNT III**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Classes)**

98.    Plaintiff and Class Members re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 76.

99.    When Plaintiff and Class Members provided their PII to Defendants in exchange for Defendants' services, they entered into implied contracts with Defendants under which—and by mutual assent of the parties—Defendants agreed to take reasonable steps to protect their PII.

100.    Defendants solicited and invited Plaintiff and Class Members to provide their PII as part of Defendants' regular business practices and as essential to the transaction to process membership payments. This conduct thus created implied contracts between Plaintiff and Class Members on one hand, and Defendants on the other hand.  Plaintiff and Class Members accepted Defendants' offers by providing their PII to Defendants in connection with their purchases from

CLASS ACTION COMPLAINT

1    Defendants.

2        101.    When entering into these implied contracts, Plaintiff and Class Members

3    reasonably believed and expected that Defendants' data security practices complied with relevant

4    laws, regulations, and industry standards.

5        102.    Defendants' implied promise to safeguard Plaintiff's and Class Members' PII is

6    evidenced by a duty to protect and safeguard PII that Defendants required Plaintiff and Class

7    Members to provide as a condition of entering into consumer transactions with Defendants.

8        103.    Plaintiff and Class Members paid money to Defendants to purchase products or

9    services from Defendants. Plaintiff and Class Members reasonably believed and expected that

10   Defendants would use part of those funds to obtain adequate data security.  Defendants failed to

11   do so.

12       104.    Plaintiff and Class Members, on the one hand, and Defendants, on the other hand,

13   mutually intended—as inferred from customers' continued use of Defendants' services—that

14   Defendants would adequately safeguard PII. Defendants failed to honor the parties'

15   understanding of these contracts, causing injury to Plaintiff and Class Members.

16       105.    Plaintiff and Class Members value data security and would not have provided their

17   PII to Defendants in the absence of Defendants' implied promise to keep the PII reasonably

18   secure.

19       106.    Plaintiff and Class Members fully performed their obligations under their implied

20   contracts with Defendants.

21       107.    Defendants breached their implied contracts with Plaintiff and Class Members by

22   failing to implement reasonable data security measures and permitting the Data Breach to occur.

23       108.    As a direct and proximate result of Defendants' breaches of the implied contracts,

24   Plaintiff and Class Members sustained damages as alleged herein.

25       109.    Plaintiff and Class Members are entitled to compensatory, consequential, and

26   other damages suffered as a result of the Data Breach.

27       110.    Plaintiff and Class Members also are entitled to injunctive relief requiring

28

CLASS ACTION COMPLAINT

Defendants to, *inter alia*, strengthen their data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Classes)**

111.    Plaintiff and Class Members re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 76.

112.    Defendants benefited from receiving Plaintiff's and Class Members' PII by their ability to retain and use that information for their own benefit. Defendants understood this benefit.

113.    Defendants also understood and appreciated that Plaintiff's and Class Members' PII was private and confidential, and its value depended upon Defendants maintaining the privacy and confidentiality of that PII.

114.    Plaintiff and Class Members who were customers of Defendants conferred a monetary benefit upon Defendants in the form of monies paid for services available from Defendants.

115.    Defendants appreciated or had knowledge of the benefits conferred upon them by Plaintiff and Class Members. Defendants also benefited from the receipt of Plaintiff's and Class Members' PII, as Defendants used it to facilitate the transfer of information and payments between the parties.

116.    The monies that Plaintiff and Class Members paid to Defendants for services were to be used by Defendants, in part, to pay for the administrative costs of reasonable data privacy and security practices and procedures.

117.    Defendants also understood and appreciated that Plaintiff's and Class Members' PII was private and confidential, and its value depended upon Defendants maintaining the privacy and confidentiality of that PII.

CLASS ACTION COMPLAINT

118.    But for Defendants' willingness and commitment to maintain privacy and confidentiality, that PII would not have been transferred to and entrusted with Defendants. Indeed, if Defendants had informed Plaintiff and Class Members that their data and cyber security measures were inadequate, Defendants would not have been permitted to continue to operate in that fashion by regulators, their shareholders, and their consumers.

119.    As a result of Defendants' wrongful conduct, Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class Members. Defendants continue to benefit and profit from their retention and use of the PII while its value to Plaintiff and Class Members has been diminished.

120.    Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged in this Complaint, including compiling, using, and retaining Plaintiff's and Class Members' PII, while at the same time failing to maintain that information secured from intrusion and theft by hackers and identity thieves.

121.    As a result of Defendants' conduct, Plaintiff and Class Members suffered actual damages in an amount equal to the difference in value between the amount Plaintiff and Class Members paid for their purchases with reasonable data privacy and security practices and procedures and the purchases they actually received with unreasonable data privacy and security practices and procedures.

122.    Under principals of equity and good conscience, Defendants should not be permitted to retain the money belonging to Plaintiff and Class Members because Defendants failed to implement (or adequately implement) the data privacy and security practices and procedures that Plaintiff and Class Members paid for and that were otherwise mandated by federal, state, and local laws and industry standards.

123.    Defendants should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds they received as a result of the conduct alleged herein.

CLASS ACTION COMPLAINT

## COUNT V
### Violation of the California Consumer Privacy Act
### (On Behalf of Plaintiff and the California Class)

124.    Plaintiff and California Class Members re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 76.

125.    Defendants violated section 1798.150(a) of the California Consumer Privacy Act ("CCPA") by failing to prevent Plaintiff's and the California Class' PII from unauthorized access and exfiltration, theft, or disclosure as a result of Defendants' violations of their duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the PII.

126.    The PII of Plaintiff and the California Class was subjected to unauthorized access and exfiltration, theft, or disclosure as a direct and proximate result of Defendants' violation of their duty under the CCPA.

127.    Plaintiff and the California Class lost money or property, including but not limited to the loss of legally protected interest in the confidentiality and privacy of their PII, nominal damages, and additional losses as a direct and proximate result of Defendants' acts described above.

128.    Defendants knew, or should have known, that their network computer systems and data security practices were inadequate to safeguard PII and that the risk of a data breach or theft was highly likely. Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect PII, such as encrypting the PII so in the event of a data breach the PII cannot be read by an unauthorized third party. As a result of the failure to implement reasonable security procedures and practices, the PII of Plaintiff and members of the California Class was exposed.

129.    Defendants are organized for the profit or financial benefit of their owners and collects PII as defined in Cal. Civ. Code section 1798.140.

130.    Plaintiff and the California Class seek injunctive or other equitable relief to ensure that Defendants hereinafter adequately safeguard PII by implementing reasonable security procedures and practices. This relief is important because Defendants still holds PII related to

24

CLASS ACTION COMPLAINT

Plaintiff and the California Class. Plaintiff and the California Class have an interest in ensuring that their PII is reasonably protected.

131.    On October 4, 2021 Plaintiff's counsel sent a notice letter to Defendants' registered service agents via certified mail. Assuming Defendants do not cure the effects of the Data Breach, which would require retrieving the PII or securing the PII from continuing and future use, within 30 days (Plaintiff believes any such cure is not possible under these facts and circumstances), Plaintiff intends to amend this complaint to seek actual damages and statutory damages of no less than $100 and up to $750 per customer record subject to the Data Breach on behalf of the California Class as authorized by the CCPA.

## COUNT VI
### Violation of California's Unfair Competition Law
### (Cal. Bus. & Prof. Code § 17200, *et seq.*)
### (On Behalf of Plaintiff and the Classes)

132.    Plaintiff and Class Members re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 76.

133.    By reason of the conduct alleged herein, Defendants engaged in unlawful and unfair business practices within the meaning of California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200, *et seq*.

134.    Defendants stored the PII of Plaintiff and Class Members in its computer systems.

135.    Defendants knew or should have known they did not employ reasonable, industry standard, and appropriate security measures that complied with federal regulations and that would have kept Plaintiff's and Class Members' PII secure and prevented the loss or misuse of that PII.

136.    Defendants did not disclose at any time that Plaintiff's and Class Members' PII was vulnerable to hackers because Defendants' data security measures were inadequate and outdated, and Defendants were the only ones in possession of that material information, which Defendants had a duty to disclose.

CLASS ACTION COMPLAINT

**A.      Unlawful Business Practices**

137.      As noted above, Defendants violated Section 5(a) of the FTC Act (which is a predicate legal violation for this UCL claim) by misrepresenting, by omission, the safety of their computer systems, specifically the security thereof, and its ability to safely store Plaintiff's and Class Members' PII.

138.      Defendants also violated Section 5(a) of the FTC Act by failing to implement reasonable and appropriate security measures or follow industry standards for data security, by failing to ensure its affiliates with which it directly or indirectly shared the PII did the same, and by failing to timely` notify Plaintiff and Class Members of the Data Breach.

139.      If Defendants had complied with these legal requirements, Plaintiff and Class Members would not have suffered the damages related to the Data Breach, and consequently from Defendants' failure to timely notify Plaintiff and Class Members of the Data Breach.

140.      Defendants' acts and omissions as alleged herein were unlawful and in violation of, *inter alia*, Section 5(a) of the FTC Act.

141.      Plaintiff and Class Members suffered injury in fact and lost money or property as the result of Defendants' unlawful business practices.    In addition, Plaintiff's and Class Members' PII was taken and is in the hands of those who will use it for their own advantage, or is being sold for value, making it clear that the hacked information is of tangible value. Plaintiff and Class Members have also suffered consequential out of pocket losses for procuring credit freeze or protection services, identity theft monitoring, and other expenses relating to identity theft losses or protective measures.

**B.      Unfair Business Practices**

142.      **Defendants engaged in unfair business practices under the "balancing test."** The harm caused by Defendants' actions and omissions, as described in detail above, greatly outweigh any perceived utility. Indeed, Defendants' failure to follow basic data security protocols and failure to disclose inadequacies of Defendants' data security cannot be said to have

CLASS ACTION COMPLAINT

had any utility at all. All of these actions and omissions were clearly injurious to Plaintiffs and Class Members, directly causing the harms alleged below.

143.    **Defendants engaged in unfair business practices under the "tethering test."** Defendants' actions and omissions, as described in detail above, violated fundamental public policies expressed by the California Legislature. *See, e.g.*, Cal. Civ. Code § 1798.1 ("The Legislature declares that . . . all individuals have a right of privacy in information pertaining to them . . . . The increasing use of computers . . . has greatly magnified the potential risk to individual privacy that can occur from the maintenance of personal information."); Cal. Civ. Code § 1798.81.5(a) ("It is the intent of the Legislature to ensure that personal information about California residents is protected."); Cal. Bus. & Prof. Code § 22578 ("It is the intent of the Legislature that this chapter [including the Online Privacy Protection Act] is a matter of statewide concern."). Defendants' acts and omissions thus amount to a violation of the law.

144.    **Defendants engaged in unfair business practices under the "FTC test."** The harm caused by Defendants' actions and omissions, as described in detail above, is substantial in that it affects thousands of Class Members and has caused those persons to suffer actual harms. Such harms include a substantial risk of identity theft, disclosure of Plaintiff's and Class Members' PII to third parties without their consent, diminution in value of their PII, consequential out of pocket losses for procuring credit freeze or protection services, identity theft monitoring, and other expenses relating to identity theft losses or protective measures. This harm continues given the fact that Plaintiff's and Class Members' PII remains in Defendants' possession, without adequate protection, and is also in the hands of those who obtained it without their consent. Defendants' actions and omissions violated Section 5(a) of the Federal Trade Commission Act. *See* 15 U.S.C. § 45(n) (defining "unfair acts or practices" as those that "cause[ ] or [are] likely to cause substantial injury to consumers which [are] not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition"); *see also, e.g.*, *In re LabMD, Inc.*, FTC Docket No. 9357, FTC File No. 102-3099

CLASS ACTION COMPLAINT

(July 28, 2016) (failure to employ reasonable and appropriate measures to secure personal information collected violated § 5(a) of FTC Act).

145.    Plaintiff and Class Members suffered injury in fact and lost money or property as the result of Defendants' unfair business practices. Plaintiff and Class Members' PII was taken and is in the hands of those who will use it for their own advantage, or is being sold for value, making it clear that the hacked information is of tangible value. Plaintiff and Class Members have also suffered consequential out of pocket losses for procuring credit freeze or protection services, identity theft monitoring, and other expenses relating to identity theft losses or protective measures.

146.    As a result of Defendants' unlawful and unfair business practices in violation of the UCL, Plaintiff and Class Members are entitled to damages, injunctive relief, and reasonable attorneys' fees and costs.

<u>**COUNT VII**</u>
**Declaratory Judgment**
**(On Behalf of Plaintiff and the Classes)**

147.    Plaintiff and Class Members re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 76.

148.    Defendants owe duties of care to Plaintiff and Class Members which require them to adequately secure their PII.

149.    Defendants still possess Plaintiff's and Class Members' PII.

150.    Defendants do not specify in the *Notice of Data Breach* letter what steps they have taken to prevent this from occurring again.

151.    Plaintiff and Class Members are at a present and continuing risk of harm due to the exposure of their PII and Defendants' failure to address the security failings that lead to such exposure.

152.    Plaintiff, therefore, seeks a declaration that (1) each of Defendants' existing security measures do not comply with their explicit or implicit contractual obligations and duties of care to provide reasonable security procedures and practices appropriate to the nature of the

28

CLASS ACTION COMPLAINT

information to protect consumers' personal information, and (2) to comply with their explicit or implicit contractual obligations and duties of care, Defendants must implement and maintain reasonable security measures, including, but not limited to:

    a.   Engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

    b.   Engaging third-party security auditors and internal personnel to run automated security monitoring;

    c.   Auditing, testing, and training its security personnel regarding any new or modified procedures;

    d.   Segmenting user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendants' systems;

    e.   Conducting regular database scanning and security checks;

    f.   Routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

    g.   Purchasing credit monitoring services for Plaintiff and Class Members for a period of ten years; and

    h.   Meaningfully educating Plaintiff and Class Members about the threats they face as a result of the loss of their PII to third parties, as well as the steps they must take to protect themselves.

## PRAYER FOR RELIEF

    WHEREFORE, Plaintiff, individually and on behalf of all of the Class Members, respectfully request that the Court enter judgment in their favor and against Defendants as

CLASS ACTION COMPLAINT

follows:

    A.    For an Order certifying the Classes as defined herein and appointing Plaintiff and their Counsel to represent the Classes;

    B.    For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Classes Members' PII;

    C.    For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

        i.    prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

        ii.    requiring Defendants to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

        iii.    requiring Defendants to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendants can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

        iv.    requiring Defendants to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the personal identifying information of Plaintiff and Class Members' PII;

        v.    prohibiting Defendants from maintaining Plaintiff's and Class Members' PII on a cloud-based database or unencrypted file system;

        vi.    requiring Defendants to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on

CLASS ACTION COMPLAINT

Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

vii.   requiring Defendants to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.   requiring Defendants to audit, test, and train its security personnel regarding any new or modified procedures;

ix.   requiring Defendants to segment data by, among other things, creating firewalls and access controls so that if some of Defendants' networks are compromised, hackers cannot gain access to other portions of Defendants' systems;

x.   requiring Defendants to conduct regular database scanning and securing checks;

xi.   requiring Defendants to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the PII of Plaintiff and Class Members;

xii.   requiring Defendants to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii.   requiring Defendants to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendants' policies, programs, and systems for protecting PII;

xiv.   requiring Defendants to implement, maintain, regularly review, and revise as

31

CLASS ACTION COMPLAINT

necessary a threat management program designed to appropriately monitor Defendants' information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

    xv.   requiring Defendants to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential PII to third parties, as well as the steps affected individuals must take to protect themselves;

    xvi.   requiring Defendants to implement logging and monitoring programs sufficient to track traffic to and from Defendants' servers; and

    xvii.   for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendants' compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment; and

D.    For restitution and disgorgement of the revenues wrongfully obtained as a result of Defendants' wrongful conduct;

E.    For an award of actual damages, statutory damages and compensatory damages, in an amount to be determined at trial;

F.    For an award of costs of suit, litigation expenses and attorneys' fees, as allowable by law; and

G.    For such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of herself and all others similarly situated, hereby demands a jury trial for all claims so triable.

Date: October 7, 2021               Respectfully Submitted,

                        By:    */s/M. Anderson Berry*
                             M. ANDERSON BERRY

CLASS ACTION COMPLAINT

M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Facsimile: (916) 924-1829
aberry@justice4you.com
gharoutunian@justice4you.com

*Attorneys for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT